Next case please. Mr. Anderson Good afternoon, your honors. May it please the court, counsel. I am Ed Anderson, attorney for Preston Marizetts. In this case, we argue that this court should reverse Mr. Marizetts' first-degree murder conviction because he was denied his right to a fair trial by the Supreme Court's refusal to reopen evidence to allow him to testify in his own defense. This case presents the essential question of the importance of the efficiency of the court versus the fair opportunity to defend that is assured a defendant. A defendant has a fundamental right to testify in his own defense. In this case, the court barred the defendant from testifying by refusing to reopen the evidence. What we know from the facts of this case is that the defendant is an 18-year-old, developmentally disabled high school dropout. Prior to trial, he didn't communicate well with his defense attorney. Counsel indicated that he had met with Mr. Marizetts eight times and Mr. Marizetts had really not communicated his view of what happened in the incident that led to the shooting. But nevertheless, based on the information counsel had, he intended to present a self-defense, second-degree murder defense, primarily based on the expected testimony of Jonathan Hess, another person who was at the scene of this incident in the Harrison homes in Peoria. It was expected that Hess would provide some evidence that another person in the yard outside the apartment where the shooting occurred had possessed a gun and was drawing the gun when Mr. Marizetts fired his handgun. When Mr. Hess testified, he was very forgetful. He didn't really recall that the other party that had a gun was there. He only really remembered that Mr. Marizetts fired a gun and that someone was shot. Right after Mr. Hess testified, the court questioned Mr. Marizetts about whether or not he wanted to testify. And at that point, Mr. Marizetts said that no, he would forgo his right to testify in his own defense. The instruction conference was then held and during that instruction conference, the trial judge found that there simply wasn't sufficient evidence to allow instruction to the jury on self-defense of second degree murder. They broke for the day and in the morning, the very first thing that happened was defense counsel indicated to the court that the defendant would now like to testify and wanted to reopen the evidence and was prepared to testify in his own defense. The state, of course, objected and felt they were prejudiced and suggested that the defendant would be trimming his testimony based on what he'd heard in the instruction conference. Trial counsel, who we have no reason to doubt, said that that wasn't what was happening, that the defendant knew before the instruction conference what was necessary to provide self-defense, second degree murder defense because trial counsel had gone over that with him in trial preparation. So it was no news to Mr. Marizetts in the instruction conference that there would have to be some indication that he was being threatened by Harris, the other party with the gun. However, in this instance, the judge looked at this, considered the circumstances, and decided that he wouldn't allow the evidence to be reopened and that led to the jury only being instructed on first degree murder and returning a verdict of guilty. It's our argument that that was error. The fundamental right to defend is such an extraordinary right that you can only bar a defendant in the most extraordinary circumstances from testifying. And those extraordinary circumstances aren't present here. The case that we rely on is People v. Figueroa, in which the appellate court set out four factors to consider in determining whether or not to allow the defendant to reopen evidence. The first of those factors is the timeliness of the request. Here it was the very next morning. It wasn't going to delay the trial. It wasn't going to require an additional day of time in the court. The significance of the testimony is the second Figueroa factor. Well, this testimony was vital. It was essential to the defendant's defense. He was the only person, after Mr. Hess's loss of memory, who would provide evidence of self-defense. The third factor under Figueroa is the effect of the opening the evidence on the prosecution. Well, there's no question that this has an influence on the prosecution's case. It could open the door to a second-degree murder verdict, which is contrary to the state's theory that the defendant's guilty of first-degree murder. But we have to remember that it's the state's duty – the prosecutor's duty – to do justice, not to get the most serious conviction they can obtain. If Mr. Merazetz testifies, and the jury chooses to credit his testimony as true, and it returns a verdict of second-degree murder, then that is justice, and that is what the state is seeking. Even if the jury believed that it was pure self-defense and acquitted him, that, too, would be justice. The fourth Figueroa factor is the reasonableness of the explanation for the change of mind. Here, the court believed that Mr. Merazetz was trying to trick the court, trying to manipulate the system. As I say, counsel denied this. And what we know is that the defendant is an 18-year-old. He's a high school dropout. And, after trial, we learned he has an IQ of 65. He's not manipulating the court. We also know from case law that's come down in recent years, particularly from the U.S. Supreme Court, that teenagers aren't to be treated like adults. They don't think like adults, and they shouldn't be held to the same standards. So, in weighing whether he's manipulating the court, I think that is an important thing to consider, something that I believe that the trial judge did not consider. But, fundamentally, the important point is that the significance of the testimony, it's so important that it outweighs the question of the reasonableness of the explanation. After all, the prosecutors would have the opportunity to cross-examine, to point out any flaws in his testimony. But that testimony was the only way Mr. Merazetz was going to get the instruction. That testimony would have been that when he stepped out the door of the apartment, he saw Devante Harris pulling a gun, and then he began firing his gun. In that way, this case is very much like the Washington case, which we cite in our reply brief. And it's not like the Mischke case that the state decided. Mischke is a bench trial involving the use of a firearm against an unarmed person. Washington, I think, stands as an excellent example, where that defendant armed himself, was in a confrontation, fired a gun. And a good deal of the evidence suggested that he was the aggressor, that he began firing before anyone else. But his testimony was, one of the opponents with whom there was a fight was reaching into his waystand for a gun, and Washington began firing his gun when he saw that. The Supreme Court said that's enough to require secondary murder self-defense instructions. If it's enough in Washington, it would be enough in this case. And that's why it was crucial that Mr. Marazetz have the opportunity to testify. So, in conclusion, the point here is that the defendant's testimony was vital. It was the only way he was going to receive the self-defense second-degree murder instructions. He has a fundamental right to testify. And it simply was reversible error to prevent him from testifying. What was the only significant event that occurred after his first decision, not refusal, but saying, I don't want to testify, and then his decision to testify? What was the only thing that occurred? Well, two things occurred. The police officer was called to impeach Hess, who had forgotten what happened. And then the instruction conference. And then, of course, the overnight grave. Right. So, if the defense counsel is right, the defendant knew everything he needed to know about what evidence was necessary for a second-degree murder instruction when he was first asked by the trial judge whether he wanted to testify. So then, I'm just wondering, can you say that the judge's determination that he was trying to manipulate the system was against the manifest way, or an abuse of discretion? Abuse of discretion. Well, I would argue that it is. It's finding a fact, I guess. Based on what he knows in light of the... Of course, you have to start from how fundamental the basic need of self-defense to defending oneself with one's own testimony is. That right is so essential that I think you start out with a balance heavily in favor of letting the person put on his evidence. So then you have to look at, is he manipulating the system? Is this a trip? I would say that you can find that there's an abuse of discretion here when we take into account that we're looking at an 18-year-old high school dropout who doesn't have a lot of prior experience with the criminal justice system. It's not like he's a con that has been playing the system. Now, the state says psychological testing showed he was manipulative. Well, he was manipulative as a 10-year-old with an IQ of 65, which means he was operating like a 6-year-old, I suppose, in wanting to manipulate caseworkers into letting him have candy or go play recess or whatever. That's a whole different ballpark from being in a court and looking at a judge and thinking, how can we play this? Even if the judge is right in his own mind and is correct in his finding at trial, I would argue that post-trial, in the post-trial motion when it's raised as an issue and the judge is now aware that the defendant has been identified as having mental retardation, low IQ, I would argue that at that point the judge should have reconsidered, should have thought this wasn't manipulation, this kid isn't capable of that, and at that point granted the motion for a new trial based on the failure to reopen. Your Honors, again, it's a fundamental right, it was violated in this case, and we ask Your Honors to reverse the conviction and remand for a new trial. Thank you. Mr. Arado. Good afternoon, Your Honors. May it please the Court, Counsel? Oh, he's a little leery when the Court is so quiet. When... I guess there's two main points that I want to address. The trial judge properly found that this was a manipulation of the system. And that even if the defendant had been allowed to testify as he proposed, the result would not have changed. So, turning to the first point, how do we know that this was a manipulation of the system? Well, the Court in Collier gives us, and Figaro before that, gives us four factors that the Court is considering. Timeliness, character, importance of the testimony, the effect of granting the motion, and of course the reasonableness of the explanation for why he didn't present that evidence in this case in chief. I think that fourth one is particularly relevant to this case. Early on, the defense counsel stated, the defendant isn't cooperating with me, with his permission, I'm allowed to tell the Court that he doesn't agree with me, he doesn't, he's not telling me, giving me any statements about what is happening, or what happened in this case. So, I'm just going on my own in presenting this self-defense and raising this 413. So, all through this trial, the defendant has not said anything to his counsel. During the instructions conference, again, when it's brought up in discussing self-defense, the defense counsel says, look, all I can tell you is that the defendant has not said anything to me about what happened. So, I don't know what else to do, this is what I have to go on. Lo and behold, after we have the entire instructions conference, after the night passes, what is the defendant's excuse for not presenting this or not saying anything before? He doesn't really have an excuse, he just says, well, I thought about it overnight and changed my mind. Why? The reasonableness of the explanation, that is not a reasonable explanation. He could have been telling his attorney all along what had happened, but he didn't. So, I think the trial judge, in looking at this, said, well, your explanation, and the judge said,  I'm finding this an attempt to manipulate the process. Now, is that an abuse of discretion? What did he actually do to manipulate the process? I mean, what was it that the judge found was manipulative? What was manipulative was that... He changed his mind? That he would have had the opportunity to understand or hear all the arguments, and then craft his testimony to the arguments. These are crafting kind of guys. Well, the defense counsel points out that, well, this is a high school dropout, he's got a low IQ, etc. The trial court certainly didn't have any of that information. It was never raised that he was somehow incompetent or unable to understand what was going on. He even says, look, I gave him this memo about self-defense and he clearly understood it. Well, if he knew everything about self-defense up to that point, he could have presented his side of the story to his attorney and then testified. But he was admonished, given extensive admonishments. I won't go through all of them, but given extensive admonishments, and said, look, I understand, this is my decision, I'm going forward, and my attorney can't tell me whether to testify or not, and I am deciding not to testify. So that part is, is this an abuse of discretion? Under the facts as known to the judge at the time, I do not believe that this was an abuse of discretion. Would another judge have done something differently? Maybe, but that's not the standard. It's whether no reasonable judge in that situation would have done it. Now, also as far as what his proffer of evidence, the importance of this evidence, he said that, well, this was clearly important. I admit, when initially the judge was denying the motion to reopen, he said, well, the evidence is clearly important because it could sustain this. But then when they go to the proffer of proof after the jury has been sent off, they offer the proffer of proof. The judge says, well, you know, after hearing that, I'm not even sure that this would have gotten the self-defense instruction. So I would suggest that that evidence isn't as important as defendant would have you believe. And certainly if you look at what the evidence itself is, or proposed evidence, it is that he went out there and was the first to shoot. Everyone else testified that he was the first to shoot. So how does his evidence exactly help him? If he went out there with a gun, and he sees somebody allegedly going for a gun, and he shoots first, when he goes back out there, he is still the aggressor. And as the aggressor, you're not entitled to a self-defense instruction. Even if you had gotten the self-defense instruction, no reasonable jury would have found any other way other than first degree murder. So... Did the defendant's request to testify limited only to himself, or was he hoping to have other witnesses testify if the evidence was real? That is a good point, Your Honor. He actually took a break, came back, and defense counsel said, oh, by the way, he also wants two other witnesses to testify. And this is the first time he ever told me about that. Now granted, those two witnesses actually are listed as state witnesses, so it wouldn't be necessarily a surprise to the state that these people would possibly be testifying. They were not disclosed to state what their statements would be. There was no 413 disclosure about, you know, what is it that... Could the court have limited it to one witness, or... Theoretically, you could offer that as a sanction, limiting it, yes, as a failure to disclose... Was there an offer of proof of what Chiquetta, Foster, or Geneva Watts would testify to? No, there was not. There was only an offer of proof of what the defendant supposedly would have said. So, and if... Those other two witnesses were being brought forth to testify, you know, there would have been further delay in the trial, because there was no evidence that they were present or ready to testify. So... So I think the... Otherwise, the brief more or less handles the explanations. If there's no other questions, then we'll just ask that the court affirm. Let me ask a question. If the defendant had been allowed to testify, could the State of Cross examine him on the timing of his choice to testify? In other words, hey, you didn't want to testify yesterday. We're reopening the evidence because you decided, after hearing all the arguments on self-defense, that now you wanted to testify. Well... And it's in the judge's ruling. Is that fair game if he does that? I suppose they could have asked to do that. Would that implicate somehow his Fifth Amendment, you know, silence prior to testifying? Usually, once you start testifying, your Fifth Amendment right not to testify is not an issue anymore. Oh, sure, but silence prior to his testifying, is that a question, I guess? I'm just wondering if it... I would think that they could ask that, they'd be allowed to ask that, and then it'd be up to the judge to decide whether to do it or not. Thank you, Your Honor. Mr. Anderson from Rebuttal. Yes, Your Honor. Thank you. I agree with counsel that the State would be able to cross-examine him on the question of that decision and finally, you know, why are you up here now when yesterday you didn't want to? It'd be a fair game if you go up there. And that's one more reason the State wouldn't have been harmed by allowing him to testify. They'd have had an opportunity to impeach the question, be exposed to cross-examination. A few moments ago, counsel discussed the judge's ruling in finding that he thought there was manipulation. This is specifically from the portion of the transcript where that decision was made. I believe it's page 511 through 513 of the transcripts. Towards the end, when the judge is summarizing what he's heard, he notes that, and this is where he's saying I don't think it would make a difference. I don't know if there's enough evidence here to give him self-defense instructions. The judge says the fact that he returns with a gun could make him the aggressor. These are just further findings I'm making in evaluating all the circumstances. Well, I would argue that under the Washington case, which we rely on, the judge was wrong in that. Having him armed himself with a gun, per se, doesn't make him the aggressor in terms of being able to get that instruction. Washington shows us that that man armed himself with pulling a gun, which is essentially what Mr. Mirazet's testimony would have been. And it's also something that the state was aware of prior to Mr. Mirazet's decision initially to not testify. It was expected he would testify. The state was prepared to cross-examine him. The state also knew what the indications were that Hess's testimony would be, which was that Devante Harris shots were fired. So they had reason to know that self-defense second degree was going to be a question in this case. And I would presume they were prepared to cross-examine on that. So harm to them in terms of not being prepared for questions, not being prepared for the evidence, I don't think that's there. As for why the defendant waited to make his mind up, again, he was a teenager. We didn't know he was mentally retarded. But now that we know that, it certainly goes towards explaining his lack of communicativeness. If he didn't talk to counsel and couldn't communicate with counsel, maybe he's just taciturn. Maybe he's just not trusting. Maybe he had nothing to say. Or maybe he's developmentally disabled, intimidated, can't communicate, and doesn't bring forth his story until the very end when he's confronted with knowing that the jury's going to be evaluating his guilt or innocence. Or maybe the trial judge is right. Potentially, but what we're looking at here, of course, is now an 18-year-old who's serving a 45-year sentence of imprisonment for first-degree murder in a situation where a jury could look at this and say, this is a second-degree murder. And under those circumstances, particularly knowing that the right to testify to one's own defense is so fundamental, I would argue that this court is obligated to reverse the conviction and find that that right was denied and that this conviction has to be reversed. Okay, thank you both for your arguments here this afternoon. That'll be taken under advisement that a written disposition will be issued. And right now we'll be in a brief recess.